## Weidner *v.* Merz et al., Appellants.

*Sale of horse—Warranty—Evidence of prior unsoundness.*

In an action to recover damages for the breach of a warranty in the sale of a horse, which plaintiffs had bought from one Sheppard, with an express warranty of soundness, the court left it to the jury to determine whether Sheppard was the agent of defendants in the transaction, whether Merz, one of the defendants, personally warranted the horse, and whether Merz and Cleaver, the defendants, were partners in the horse and consequently both liable.

*Held*, that as there was evidence on all these points, the submission to the jury was proper.

Plaintiffs were also permitted to show that a year before the sale to them, defendants purchased the horse, and that it was at that time diseased, as evidence of a breach of the warranty of soundness on the sale to plaintiffs.

*Held*, not to be error.

Argued Feb. 29, 1892. Appeal, No. 39, July T., 1892, by defendants, Albert Merz and K. H. Cleaver, from judgment of C. P. Berks Co., Dec. T., 1888, No. 45, on verdict for plaintiffs, John B. Weidner & Brother. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Assumpsit to recover damages for breach of warranty on the sale of a horse.

The facts appear by the charge of the court below, which was as follows:

" The plaintiffs in this case seek to enforce against the defendants a claim, which they allege they have against the latter. This claim, they assert, arises from a transaction between them in the sale or exchange of a horse, which, they say they obtained from the defendants, the latter warranting it to be sound in every respect, but the horse being, in fact, at the time of the sale, diseased and unsound. The rule of law applicable in such cases is this: that where a party buys a horse from another without an express warranty, he buys him at his own risk; but if he buys the horse under an express warranty against defects which are not visible; if he buys a horse appearing to be sound under a warranty of soundness, then, if the horse is unsound, the purchaser has an action upon the warranty for his damages. A warranty of soundness will

not, of course, cover a visible, apparent defect, unless the warranty be against the consequences of the defect.

" [Now, the allegation here is, on the part of the plaintiffs, that this horse, at the time when the alleged warranty was given, did not show any unsoundness. Nor is there any testimony directly to the contrary. All there is in the testimony bearing upon this point, so far as I remember it, is a statement of witnesses who knew the horse before the time of sale, that it was always running at the nose and heavy, and that any one could see it, but that this trouble could be corrected by proper feeding.] [3]

" Now, gentlemen, the first question for your consideration in this case is, was there a warranty? And in the investigation of that question you must bear in mind what constitutes a warranty in the sale of personal property. A warranty is an assurance given by the seller as a part of the consideration of sale recommending the subject-matter sold. No precise form of expression is necessary in order to constitute a warranty. If the seller at the time of sale affirms a fact as to the essential qualities of his goods in clear and definite language, and the purchaser buys on the faith of such affirmation, that is an express warranty. Any representation or positive affirmation by the seller as to the quality, condition or fitness of the thing sold, which enters into the consideration of the sale, showing an intention to warrant the thing sold, and which was so understood and relied upon by the purchaser will amount to a warranty.

" Next, gentlemen, was there in this case a warranty of this horse by either one of the defendants. The warranty given in writing by Sheppard, is not, gentlemen, a warranty by either of these defendants; for no right or authority has been shown in Sheppard to make a warranty that would be binding upon either of these defendants. But the plaintiffs allege that Merz gave a warranty. There is no allegation that Cleaver gave any. You will remember what the evidence is on both sides touching this matter. If Merz did not warrant the horse to the plaintiffs, did not expressly agree that this horse should be sound, or else there should be no sale, then that is an end of the case, and your verdict will have to be for the defendants. But if you find from the evidence, from a fair preponderance

of the evidence, that he did so warrant this horse, then you will go on and inquire next, was this warranty an element in this sale? Did it induce the plaintiffs to buy this horse? It is not alleged on the part of the plaintiffs, that the warranty which they say was given was made at the precise moment of the sale. If I remember rightly, the final agreement for the purchase of the horse was made in the evening; and it was in the afternoon of that day, if at all, that the alleged warranty was given by Merz.

" [Now, gentlemen, if that warranty was given by Merz, as alleged by plaintiffs, then, although the contract of sale was not finally consummated at that particular moment, yet, if it was entirely finished excepting merely the fixing of the price in the final agreement, by which the horse became the property of the Weidners, and if this purchase was induced by this warranty of Merz, if the plaintiffs actually relied on that warranty, and, relying on it and on the faith of it, finally bought this horse, then there was a sale on the warranty, and somebody is bound by it. Now, if Merz made this alleged warranty, who is bound by it? We answer, that if Merz and Cleaver were partners in this horse, joint owners of it for the purpose of selling it, then both are bound by a warranty made by either in the sale of it. On this question of the ownership of and the partnership in this horse you will have to look carefully at the evidence in this case, in order to ascertain what the true facts are. Of course, if Merz and Cleaver were partners in this horse, and Merz warranted it to the Weidners, and thereby induced them to buy it, a transfer of the title to the animal, just before delivery to the Weidners, to a third party, to make the final arrangements as to the price, will not save Merz and Cleaver from liability on account of that warranty.] [4]   It is your business, gentlemen, to sift the true inwardness of this entire transaction, whereby, first, Cleaver, and then Sheppard, is alleged to have become the owner of this horse. If Sheppard, at the time the horse was sold to the Weidners, on the evening when the final arrangements were made, and on the following day when the horse was transferred to the Weidners, was the bona fide owner of this horse, then the Weidners have no claim on the defendants here. But if he was only colorably or formally the owner of the horse, but

in point of fact the agent for Cleaver and Merz, and if they were the real owners of the horse at that time, then they are bound by the warranty given by Merz, if any such was given, and if on the faith of it you find that the Weidners purchased this horse.

" In order to arrive at the very truth of this matter, you will look at every part of the evidence; you will consider all the facts testified to on either side, and all the circumstances ad mitted on either side, the direct statements of the defendants and of Sheppard, as well as the fact that Sheppard gave and the Weidners took his individual written guaranty—and all other facts bearing out their theory of the case are to be given such weight by you as you shall consider them entitled to under the whole evidence.　On the other hand you will prop- erly weigh the fact that the horse was in Merz's custody ; that Merz showed him off and warranted him, if you believe that to be the fact; that Sheppard came to the Weidners in response to a direction left with Merz's son to send some one there to negotiate for the price of the horse, if that is a fact; and what was the real transaction between Cleaver and Sheppard, where- by, though it is alleged to have been a sale, Sheppard does not appear to have profited anything, but to have handed over to Cleaver the precise consideration he received from the Weid- ners.

" In weighing the evidence bearing upon the questions in this case, gentlemen, you are the judges of the weight and credibility of each witness.　You are to reconcile all the evi- dence, if you can ; but when you come to irreconcilable con- tradictions, you must choose which you will believe.　As affecting the credibility of any witness, you are justified in considering his interest, the clearness, positiveness, frankness and precision of his testimony, or the reverse.　If you find that there was a warranty by Merz ; that the defendants were part- ners ; that they, in fact and truth, owned the horse at the time of sale ; and that the horse was bought upon the faith of such warranty, then you will next inquire whether the warranty was broken, that is, whether the horse was, at the time of the sale, unsound.　If not, then your verdict must be for the defendants. But if it was so warranted and was unsound, then you must find for the plaintiffs, and the amount of your verdict will be

the difference between the sum of one hundred and forty dollars and such sum as you believe, from the evidence, the horse was actually worth in the condition in which he was at the time of the sale. This latter sum is testified by the Weidners, and possibly one or two others, to have been from fifteen to twenty dollars. One witness said it was less than forty dollars. That is evidence you may consider upon this question. But the horse brought, a year and a quarter later, forty dollars at the sale on the horse exchange. That is also evidence for you to consider on the same point. Whatever amount you shall find due to the plaintiffs, if any, you will add interest to it from March 1, 1888, and for the aggregate sum you will return your verdict. But if there was no warranty by Merz, or if the horse at the time of the sale did not belong to Merz and Cleaver, but to Sheppard, or that Merz and Cleaver were not partners in the ownership of this horse, or that it was not bought by the Weidners upon the faith of an express warranty by Merz, in either of these cases your verdict must be for the defendants."

Verdict for plaintiffs for $110.76 and judgment thereon. Defendants appealed.

*Errors assigned* were (1, 2) admission of certain testimony; (3, 4) the portions of the charge included in brackets, quoting them; (5–12) answers to points submitted.

*C. H. Ruhl,* of *Ermentrout & Ruhl,* for appellants.

*J. H. Jacobs, H. P. Keiser* with him, for appellees.

PER CURIAM, March 28, 1892:

This case does not require discussion. It involves only questions of fact which were fairly submitted to the jury.

Judgment affirmed.